UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

MICHAEL A. SUBENKO,
         PLAINTIFF,

VS                                    CIVIL ACTION No:

FRANK MONDANO,
         DEFENDANT(S).           04-10227

AFFIDAVIT IN SUPPORT OF COMPLAINT

       MICHAEL A. SUBENKO, BEING DULY SWORN
ACCORDING TO LAW UPON HIS OATH DEPOSES
AND SAYS:

1. I AM THE PLAINTIFF IN THE ABOVE-CAPTIONED
MATTER, AND MAKE THIS AFFIDAVIT IN SUPPORT
THEREOF.

2. I AM PRESENTLY INCARCERATED, UNDER THE
CONTROL OF THE MASSACHUSETTS DEPARTMENT
OF CORRECTION AND CURRENTLY CONFINED AT,
M.C.I. NORFOLK, P.O. BOX, 43, 2 CLARK STREET,
NORFOLK, MASSACHUSETTS, 02056-0043,

3. ON JANUARY 4 1999, WHICH IS THE DATE
I WENT TO TRIAL WITH ATTORNEY FRANK
MONDANO, RETIANED TO REPRESENT, MICHAEL
A. SUBENKO,

4. IN MAY OF 1998, ATTORNEY MONDANO TOLD
PLAINTIFF THAT HE WAS NOT ENTITLED
TO A COMPETENCY EXAMINATION TO STAND
TRIAL IN A CAPTIAL CASE.

5. ON, FEBUARY 9, 10, 1993, THE PLAINTIFF
WAS FIND TO HAVE A.D.D. A LEARNING
DISABILITY. ATTACHED HERETO EXHIBIT(A),
REPORTS.

6. I ASSERT DUE TO ATTORNEY, MONDANO
CONFLICT OF INTEREST, ATTORNEY FAILED
TO EXPRESS HIS RESERVATION ON MICHAEL

1,

SUBPENA. AND IT'S FAD TO STAND TRIAL TO THE JUDGE HEARING THE CASE.

7. I ASSERT THAT ATTORENY MONDANO, HAS BILLED THE PLAINTIFF FOR THREE HOUR ATTORNEY VISITS, WHEN I ONLY SEEN ATTORNEY MONDANO FOR (30) MINUTES, ATTORNEY WOULD VISIT OTHER CLEINT'S, AND BILL ALL FOUR CLEINTS FOR THREE HOUR'S OF VISITS.

8. I ASSERT THAT ATTORNEY MONDANO HAS COMMITTED FRAUD AND IS IN VIOLATION OF RULE:3:09 AND RULE:3:07, MASSACHUSETTS RULES OF PROFESSIONAL CODE'S OF CONDUCT.

9. PLAINTIFF, THEREFORE MOVES FOR AN ORDER FOR COURT ORDER TO BE ENTERED AGAINST DEFENDANT, FRANK MONDANO, TO RETURN FUNDS TO THE PLAINTIFF IN THE SUM OF $10,000. DOLLARS, IN ACCORDANCE WITH THE PROVISIONS OF FEDERAL RULES CIVIL PROCEEDURE 37-A. AND RULE: 37(A)(4).

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 26 DAY OF January 2004.

RESPECTFULLY SUBMITTED BY PLAINTIFF. PRO-SE.

Michael Subenko W-GS867

MICHAEL A. SUBENKO. W/6S867
M.C.I. NORFOLK. STAU. CON, 332.
P.O. BOX 43. 2 CLARK STREET.
NORFOLK, MA.02056-0043.

CERTIFICATE OF SERVICE

I, MICHAEL A. SUBENKO, HEREBY CERTIFY THAT THAT A TRUE COPY OF THE ABOVE DOCUMENT WAS SERVED UPON THE ATTORNEY OF RECORD FOR THE DEFENDANT. BY MAIL ON THIS 26 TH DAY OF January, 2004

Michael Subenko
MICHAEL A. SUBENKO.

2.

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF EDUCATION
### INDIVIDUALIZED EDUCATION PLAN (IEP – Sec. 10)

SCHOOL DISTRICT: E.S.I.S./ Weymouth
EDUCATIONAL SERVICES IN INSTITUTIONAL SETTINGS

# WEYMOUTH PUBLIC SCHOOLS

APR 1 3 1998

| Meeting |
| --- |
| Date: 03/30/98 |
| Type: |
| Initial Evaluation: |
| Review # |
| Reevaluation: |

## PART A: INFORMATION SECTION

## 1. STUDENT INFORMATION

Student Name: **SUBENKO, Michael**     Identification Number: H0422

|  last | first | middle |
| --- | --- | --- |

Birth date: 10/02/78     Age: 19     Grade: **Ungraded**     Primary Language: English

Address: 123 Queen Anne's Gate, Weymouth, Ma.     Home telephone:

School name/address: Plymouth County Correctional Facility

School telephone: 508-747-9766

## 2. PARENT INFORMATION
Information below pertains to:     {}Parent     {}Guardian     {}Education Advocate     {x}Student

Name: Subenko, Michael     Name:

Address: 123 Queen Anne's Gate, Weymouth, Ma.     Address:

Home telephone:     Home telephone:

Other telephone:     Other telephone:

Primary language of the home: English     Primary language of the home:

## 3. INITIAL EVALUATION AND REEVALUATION INFORMATION
**Prereferral Activities (for initial evaluation only)**

Prereferral activities were implemented: {x} Yes, documented in student     {} No

record

If no, explain: **Student placed in an appropriate Agency Facility.**

**Eligibility Determination**

Existence of disability:     {x} Yes     {} No

Student is making effective progress in regular education: {} Yes {x} No

Eligible for special education services: {x} Yes     {} No

## 4. IEP INFORMATION

ESIS/ETL: ~~Thomas M. Mulligan~~  Terry Green     Telephone: ~~508-747-9766~~  508-823-6369

LEA Liaison: Barbara Kramer     Position: Outside Placement Coordinator     Tel: 617-3402547

IEP Period: 03/30/98-03/99 or **Date of Discharge**     Next scheduled annual review date: 03/99

Scheduled three year evaluation date:

Cost Share Placement:     Cost share participants: (X) NO     *(not applicable for ESIS Programs)*

NAME: Suhenko, Michael    DATE OF BIRTH: 10/02/98    IEP PERIOD: 03/30-03/99    or date of Discharge

## PART B:  STUDENT SECTION

### 1. STUDENT PERFORMANCE PROFILE:

Describe:   (a) student's areas of strength;  (b) students area(s) of need;  and  (c) the current level(s) of performance for each area of need that corresponds to attached goal(s) and objectives.

Michael is an eighteen year old student with a history of academic difficulty and special educational services in the Weymouth Public School system.   The student is currently in placement at the Plymouth County Correctional Facility where he has been receiving ESIS services since January of 1998. Michael was administered the Woodcock Johnson Psycho Educational Battery-Revised in March 1998 and his grade equivalent test scores are as follows:  Broad Reading 9.0, Broad Math 8.6, Broad Written Language 6.0.  Michael's test scores are consistent with his classroom performance.

Written language is Michael's area of greatest need.  He is currently able to satisfy learning standards from the Massachusetts Curriculum Frameworks' Composition Strands that require him to write    multi-sentence paragraphs using proper sentence structure and paragraph form.  When asked to expand on written responses the student tends to make mistakes in the areas of verb tense, spelling and punctuation: Although Michael is able to write clearly, problems with sequencing and order become evident in longer assignments. Work on the Framework's Composition Strands that will assist Michael in editing his work and rewriting assignments to improve content will be of great benefit. Vocabulary is also an area of need for the student.  Michael is able to determine the meaning of some unfamiliar words through the use of context clues, however many words still confuse him. Work on the Framework's Language Strands that will assist the student in developing and using an advanced vocabulary of English words would be appropriate.

In the area of Mathematics, Michael is able to satisfy the Massachusetts Curriculum Framework's Power of Mathematics Number Sense Learning Standards that require him to select the appropriate operation to solve mathematical problems and to use computation, estimation, and proportions to solve problems and to check the validity of his answers.  Often, errors in the basic operations prevent Michael from coming up with the appropriate answer. He is encouraged to use a calculator in these situations and has demonstrated skill in using this aid in solving complex problems.

Reading Comprehension is an area of strength for Michael.  He is able to satisfy the Framework's Literature Strands that require him to identify the basic facts and essential ideas in what he has read, heard or viewed at the high school level.  Assignments that will assist Michael in interpreting the meaning of literary works, non-fiction, films and media by using critical and analytical techniques, and to find evidence in these selections to support his opinions, would be of great benefit to the student.

Page 2

Case 1:04-cv-10227-PBS    Document 5    Filed 01/30/2005    Page 5 of 33

## PART B: STUDENT SECTION

### 2. STUDENT INSTRUCTIONAL PROFILE:

Describe: (a) student's approach to learning; and (b) instructional approaches and/or modifications in the classroom and other settings that will facilitate successful accommodation and education for the student, including teaching approach, curriculum methods, equipment, assistive technology, staff, facilities, grading, testing, etc.

Michael learns best in a small structured environment with clear expectations and minimal distractions. Michael is a motivated student who will work for significant periods of time in order to complete assignments.

In the area of written language, assignments should be presented clearly and be followed with concrete examples whenever possible. Future instruction should focus on English Language Arts Learning Standards, from the Massachusetts Curriculum Frameworks, that will assist the student in the development of vocabulary, the proper formation of complex sentences, and the proper formation of paragraphs.

In the area of mathematics, the student has demonstrated the ability to estimate and to grasp mathematical concepts. Although his cognitive and ordering skills appear strong, the student encounters problems with the simple processes of the basic operations. The use of assistive technology (ie: calculator, computer) is of great benefit to Michael in this area.

Page 3

INSERT THIS ADDENDUM TO THE IEP INTO THE STATE MANDATED IEP FORM. THE ADDENDUM SHOULD BE IN PART B: THE STUDENT SECTION. INSERT **AFTER** THE PAGE CONTAINING THE STUDENT PERFORMANCE PROFILE & THE STUDENT INSTRUCTIONAL PROFILE AND **BEFORE** THE PAGE CONTAINING THE GOALS AND OBJECTIVES.

**Student Name:**

*Michael Subenko*

## ADDENDUM TO THE IEP

THE ADDENDUM INCLUDES THESE COMPONENTS:

✓ DESCRIPTION OF STUDENT'S PARTICIPATION IN THE GENERAL CURRICULUM AND STATE AND DISTRICT-WIDE ASSESSMENTS

✓ DESCRIPTION OF ACCOMMODATIONS IN SPECIFIC CONTENT AREAS (IF APPLICABLE)

✓ DESCRIPTION OF PLANNED ALTERNATIVE ASSESSMENT IN SPECIFIC CONTENT AREAS (IF APPLICABLE)

✓ OTHER ELEMENTS OF THE IEP AS REQUIRED UNDER IDEA-97

FILL OUT THE TABLE BELOW REFLECTING UPON ANY STATE OR DISTRICT-WIDE ASSESSMENT TO BE ADMINISTERED DURING THE TIME SPAN COVERED BY THIS IEP. FOR EACH CONTENT AREA, IDENTIFY THE STUDENT'S *ASSESSMENT PARTICIPATION STATUS* BY PUTTING AN "X" IN THE CORRESPONDING BOX FOR COLUMN 1, 2A **OR** 2B. PUT 'NTS' (NO TESTING SCHEDULED) IN THE SAME COLUMN BOX IF NO STATE OR DISTRICT-WIDE ASSESSMENT IS SCHEDULED FOR THE STUDENT DURING THE TIME SPAN COVERED BY THIS IEP.

| | PARTICIPATION IN THE GENERAL CURRICULUM | | |
|---|---|---|---|
| | Student receives neither special education <u>nor</u> instructional accommodations as part of a Section 504 Plan in this content area. | Student receives special education <u>or</u> instructional accommodations as part of a Section 504 Plan in this content area. | |
| *NTS* | 1. Assessment participation: Student participates in on-demand testing under routine conditions in this content area. | 2A. Assessment participation: Student participates in on-demand testing with accommodations in this content area.   [see ① below] | 2B. Assessment participation: Student participates in alternative assessment in this content area. [see ② below] |
| **CONTENT AREAS** | **COLUMN 1** | **COLUMN 2A** | **COLUMN 2B** |
| History and Social Sciences | *NTS* | | |
| Science and Technology | *NTS* | | |
| Mathematics | *NTS* | | |
| English Language Arts | *NTS* | | |
| Reading (elementary only) | | | |

① For each content area identified by an x in column 2A above: Note the content area in the space provided here and describe the accommodations necessary for participation in the on-demand testing. Any accommodations used for assessment purposes should be closely modeled on the accommodations that are provided to the student as part of his/her instructional program. If necessary, write information on an additional page and attach to the IEP addendum.

*NTS*

② For each content area identified by an x in column 2B above: Note the content area in the space provided here and describe how that content area will be alternatively assessed. Use as much detail as necessary to cover all five elements described in the guidelines for alternative assessment. Guidelines are detailed in the directions for the addendum. If necessary, write information on an additional page and attach to the IEP addendum.

NAME: Subenko, Michael     DATE OF BIRTH: 10/02/78     IEP PERIOD: 03/00     or date of Discharge

## 3A. GOALS AND OBJECTIVES

| |
|---|
| Annual Goal# 1  Michael will improve his skill in the area of english language arts using the Massachusetts Curriculum Frameworks as a guide. |

### OBJECTIVES AND EVALUATION PROCEDURE AND SCHEDULE

1. **Objective:** Michael will use his knowledge of punctuation, capitalization, sentence structure, and standard English spelling to write simple sentences and short paragraphs, at the intermediate level, with 80% accuracy.

Evaluation Procedure:  evaluation of classwork and homework assignments, weekly quizzes

Evaluation Schedule: weekly, monthly, quarterly

2. **Objective:** Michael will identify the basic facts, essential details, and the sequence of important events in what he has read, heard, or viewed, at the intermediate level, with 80% accuracy.

Evaluation Procedure:  evaluation of classwork and homework assignments, weekly quizzes

Evaluation Schedule: weekly, monthly, quarterly

3. **Objective:** Michael will write coherent compositions with a clear focus and adequate detail, and explain the strategies he used to generate and organize ideas, at the intermediate level, with 80% accuracy.

Evaluation Procedure:  evaluation of classwork and homework assignments, weekly quizzes

Evaluation Schedule: weekly, monthly, quarterly

4. **Objective:** Michael will write business and friendly letters, compose a resume, and fill out job applications, at the high school level, with 80% accuracy.

Evaluation Procedure:  evaluation of classwork and homework assignments, weekly quizzes

Evaluation Schedule: weekly, monthly, quarterly

### PROGRESS REPORT INFORMATION

NAME: Subenko, Michael     DATE OF BIRTH: 10/02/78     IEP PERIOD: 03/99-03/99     or date of discharge

## 3B. GOALS AND OBJECTIVES

Annual Goal# 2  Michael will improve his skill in the area of mathematics using the Massachusetts Curriculum Frameworks as a guide.

### OBJECTIVES AND EVALUATION PROCEDURE AND SCHEDULE

1. Objective: Michael will complete a unit involving a review of the basic operations of math as they apply to multi step word problems, at the intermediate level, with 80% accuracy.
Evaluation Procedure: evaluation of classwork and homework assignments, weekly quizzes

Evaluation Schedule: weekly, monthly, quarterly

2. Objective: Michael will complete a unit involving the application of the basic math skills to percents and decimals, at the intermediate level, with 80% accuracy.
Evaluation Procedure: evaluation of classwork and homework assignments, weekly quizzes

Evaluation Schedule: weekly, monthly, quarterly

3. Objective: Given a math problem, Michael will identify the appropriate operation and solve the problem, using assistive technology (ie: calculator, computer) if necessary, at the intermediate level, with 80% accuracy.
Evaluation Procedure: evaluation of classwork and homework assignments, weekly quizzes

Evaluation Schedule: weekly, monthly, quarterly

4. Objective: Michael will complete assignments involving charts, graphs, schedules and other math visuals, at the intermediate level, with 80% accuracy.
Evaluation Procedure: evaluation of classwork and homework assignments, weekly quizzes

Evaluation Schedule: weekly, monthly, quarterly

### PROGRESS REPORT INFORMATION

Case 1:04-cv-10227-RBS    Document 15    Filed 04/30/2004    Page 9 of 33

## 4. SPECIAL EDUCATION SERVICE DELIVERY

### SPECIAL EDUCATION AND RELATED SERVICES

| Type of Service | Focus on Goal # | Person(s) Responsible | Start Date | Freq/Duration per Day/Cycle | Total Time/Cycle | Location |
|---|---|---|---|---|---|---|
| English Lang. Arts | 1-4 | ESIS Teacher | 3/98 | 5x/wk 1hr | 5hrs | ESIS Program in CHC Facility |
| Math | 1-4 | ESIS Teacher | 3/98 | 5x/wk 1hr | 5hrs | ESIS Program in CHC Facility |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

## SERVICE DELIVERY TOTALS PER CYCLE

*Total service delivery                                      10 HOURS

\*Student participation in the program may fluctuate in accordance with the protocol established by the appropriate agency or Educational Services in Institutional Settings.

Page

NAME: Subenko, Michael    DATE OF BIRTH: 10/02/78    IEP PERIOD: 03/10/98–03/99    or date of Discharge

5. SCHOOL DAY/SCHOOL YEAR

For specific hours per day, please refer to the Grid Page.

ESIS Academic School Year is 180 Days.

6. TRANSPORTATION PLAN

ESIS does not provide transportation.

7. DISCIPLINE CODE:

Student will follow the behavioral expectations of the ESIS/appropriate agency treatment facility plan.

8. PARTICIPATION IN REGULAR EDUCATION

State the student's participation in regular education for the duration of this IEP (including academic; non-academic; physical education, adapted as necessary; and extracurricular activities):

N/A to CHC Facility.

9. GRADUATION DIPLOMA

For students 14 years or older, the TEAM has determined that the student is expected to graduate from high school:

Yes            No

If yes, anticipated date of graduation: _____

"The assignment of credits and awarding of diplomas are the sole responsibilities of the LEA school systems".

10. ATTACHED INFORMATION

Statement of Needed Transition Services        Yes _____ No _____

NAME: Subenko, Michael    DATE OF BIRTH: 10/02/78    IEP PERIOD: 08/98- 03/99    Date of Discharge

## PART C: PARTICIPANTS IN TEAM MEETING SECTION

| PERSONS PRESENT AT MEETING | ROLE/ASSESSMENT RESPONSIBILITY |
|---|---|
| Barbara Kramer    *Barbara Kramer* | Chairperson/Weymouth Public Schools |
| Thomas Mulligan    *[signature]* | ESIS/ETL |
| John Kessinger    *John Kessinger* | ESIS/Teacher |
| Michael Subenko | Student |

**SOURCES OF ADDITIONAL WRITTEN INPUT**

| NAME | ROLE |
|---|---|
|  |  |

Page

STUDENT NAME: Subenko, Mich...    DOB: 10/02/78    IEP PERIOD: 03/30/98– 03/99

## STATEMENT OF NEEDED TRANSITION SERVICES*

### 1. POST-SCHOOL VISION STATEMENT

Describe student's desired outcomes in adult living, post-secondary, and working environments: _____

_____

_____

### 2. NEEDED TRANSITION SERVICES INCLUDING INTERAGENCY RESPONSIBILITIES AND/OR LINKAGE(S)
Goals and objectives must be written only if the transition service requires specially designed instruction and/or related services.

**Instruction**                  () Yes                  () No

If yes, Annual Needed Services Statement and responsible party: _____

_____

_____

_____

If no, basis for decision: _____

**Community experiences**        () Yes                  () No

If yes, Annual Needed Services Statement and responsible party: _____

_____

If no, basis for decision: _____

**Employment and other post-school adult living objectives** () Yes        () No

If yes, Annual Needed Services Statement and responsible party: _____

_____

If no, basis for decision: _____

**Daily Living Skills (If appropriate)**        () Yes        () No

If yes, Annual Needed Services Statement and responsible party: _____

_____

**Functional Vocational Evaluation (if appropriate)**        () Yes        () No

If yes, Annual Needed Services Statement and responsible party: _____

_____

### 3. CHAPTER 688 REFERRAL

Check one of the following:    () Applicable    () Not Applicable    If applicable, answer the following:

A Chapter 688 referral should be made for the student two years prior to graduation or age 22:
() Yes        () No

If yes, referral date: _____

*Please refer to Section 322.21 of the Chapter 766 Regulations.

Page

NAME: Subenko, Michael    Case 1:04-cv-10227-RBB   DATE OF BIRTH: 10/02/78  Document 5   IEP PERIOD: 03/30/98   Filed 11/30/2004   03/99   Page 13 of 33

or date of
Discharge

## PART D: RESPONSE OPTIONS/SIGNATURES SECTION

**Parent Response and Signatures**

✓ I have received a copy of the Parents' Rights Brochure

✓ I accept the IEP in full

_____ I accept the finding of no eligibility for special

education

_____ I postpone a decision until the completion of an
independent evaluation

_____ I request an independent evaluation

_____ I reject the IEP in full

_____ I reject the finding of no eligibility for
special education

_____ I reject the following portions of the IEP with the
understanding that any portion(s) that I do not
reject will be considered accepted and
implemented
immediately.

Rejected portions are as follows: _____
_____
_____

_____ I requested a meeting to discuss the rejected IEP
or
rejected portion(s).

Signature: *Michael Subenko*    Date: 4/6/98
(Parent/Foster Parent/Guardian/Educational Advocate/Student 18 and Over)

## SCHOOL PERSONNEL RESPONSE AND SIGNATURES

I certify that the goals in this IEP are those recommended by the TEAM and that the indicated services will be provided.

ESIS Principal Signature/Date _____ 3/30/98 _____

I certify that the goals in this IEP are those recommended by the TEAM and that the indicated services will be provided by ESIS
during the period of agency placement in this facility.

*Barbara Hames 3-30-98 for Ronald Gorin*
LEA Special Education Administrator Signature/Date

If placement outside the local education agency is recommended, I certify that services stated in the IEP will be provided at:

Facility Name/Address: _____
_____
_____
_____

Director of Accepting Facility Signature/Date _____

*The right to an independent evaluation at school committee expense shall continue for sixteen (16) months after the initial
evaluation or reevaluation with which the parent disagrees. A school committee shall not be required to pay for an independent
evaluation requested or obtained after that time.

Page

## Weymouth Public School

### SPED -7B

**Student:** Mike Subenko
**Date of Testing:** 01/20/93
**Date of Birth:** 10/02/78
**Examiner:** Susan Kerrigan

**Grade:** 8
**Age:** 14-4
**School:** W.J.H.

Reason for Referral:  Mike was referred as a result of poor preformance in his academic classes and serious concerns about Mike's ability to conform to the behavioral expectations within the school. Mike has been absent over 33 days this year and tardy over 36 times. Second term Mike failed in all academic areas and is in danger of failing for the year.

Observations: Mike was cooperative and pleasant throughout the testing. He was easily engaged during the testing and appeared to give all tests his best effort. It is believed that the test results are a valid indication of Mike's current academic achievement.

Test Administered:
Mike was administered the Woodcock- Johnson Revised Tests of Achievement form A.  The skills measured in the WJ-R ACH are : Reading; Mathematics ; Written Language ; Broad Knowledge ; and Skills.

Test Results:

| | %ILE | RANGE | |
|---|---|---|---|
| LETTER WORD | 42%ile | ave. | |
| PASS. COMPRE. | 41% | ave. | |
| CALCULATION | 27% | weak ave. | |
| APPLIED PROB. | 73% | strong ave. | |
| DICTATION | 20% | low ave. | |
| WRITING SAMP. | 7% | low | |
| SCIENCE | 14% | low ave. | |
| SOC.STUDIES | 22% | low ave. | |
| HUMANITIES | 3% | low | |

| | %ILE | RANGE | SD DIFF. |
|---|---|---|---|
| BROAD READING | 39%ile | ave. | 1.20 |
| BROAD MATH | 47%ile | ave. | 1.27 |
| BROAD WRITTEN LANG. | 10%ile | low ave. | -1.20 |
| BROAD KNOWLEDGE | 8%ile | low | -1.34 |

The Broad Achievement Standard scores are derived from "averaging" two achievement subtests.  The percentile range are based on grade.

Reading
Mike's achievement in phonetic analysis and sight word recognition was solidily within average range of achievement at the 42%ile.  Passage Comprehension was also in average range placing him in the 41th%ile. The cluster score of  G.E. is an average of the decoding and comprehension ( cloze procedure ) scores. This places Mike in the 39th percentile in broad reading skills. This indicates that Mike at this time is achieving at an average range of performance for his grade.

Math
Mike worked hard on the calculation subtest but made errors in operations that involved adding unlike fractions, working with variables, negative numbers,  multiplication and division

with decimals and determining percent.Calculation score was in the 27%ile placing him in the weak average range of achievement .Mike was able to use strong reasoning abilities to solve the word problems when calculation involved was not the major component.Mike avoided using pencil and paper during this test and perfered to see if he could determine the answer in his head. He had difficulty with percentages and averaging.  Achievement score in applied problems was in the 73%ile placing him in the strong average range of achievement. Broad Mathematics Achievement is a combination of the Calculation and Applied Problems test.  His broad measure of math achievement placed him in the 47th percentile when compare with other students at his grade level.This indicated an average range of achievement in Broad Math.

Written Language
        Mike was thoughtful and persistent during the test that involved writing complete and detailed sentences.He had an unusual pencil grip that made his pointer finger appear hyperextended.Mike frequently omitted the punctuation at the end of his sentences and the context of the sentence often did not coincide with the cue.  Mike's score in the low average range of achievement in his ability to formulate sentences that express his understanding of language. Writing Sample score was in the 7th percentile.  His score in mechanics of spelling and punctuation was in the 20th percentile placing him in the low average range of achievement.Mike score was brought down because of his failure to use any punctuation at the end of abbreviations or when separating town from state. Mike also made usage mistakes (knife-knives, ox, oxen ).His Broad Written Language achievement was in the 10%ile placing him in low range of written language achievement.  This score provides a broad measure of written language achievement including both production of single-word responses and production of sentences embedded in context.

Knowledge
        Mike's knowledge of biological and physical knowledge fell solidly within low average range of achievement at the 14%ile. His knowledge of history, geography, governemt, economics and other aspects of social studies fell within the low average range of achievement in the 22%ile. Mike's knowledge of art, music and literature showed an achievement level that was in the low range of academic achievement in the 3%ile.Mike failed on several questions that are influenced by early chilrhood experiences. He was unable to identify  a picture that depicted Goldilocks and the Three Bears or complete the ending to nursery rhymes. The combination of the Science, Social Studies and Humanities tests provide a broad measure of general information achievement in three content areas.Mike's Broad Knowledge score was in the 8%ile which places him in the low range of achievement.

Summary
        Mike show a strength in his ability to solve word problems that involve math reasoning. However Mike's skills in the basic operations in math were just in the weak average range. He showed weaknesses in working with unlike fractions, negative numbers, variables and determineing percent.Mike stated that in school he feels most capable in math. During the problem solving portion of the testing he put a great deal of effort into trying to figure out the answers in his head rather than use pencil and paper.
        Mike's Broad Reading achievement fell solidly within average range of achievement. Both his word attack skills and ability to comprehend what was read fell within average range.
        Written Language skills showed significant deficits in Mike's skills in spelling, usage and punctuation skills.Mike wrote all of his sentences on the writing samples without any end punctuation. Sentence construction itself was poor. He wrote in fragments and offered few descriptors in his sentences.
        Weaknesses were also noted in Michael's Broad Knowledge achievement.His weakest area was in the humanities especially in those questions that were impacted by early childhood experiences.

SUMMARY OF PSYCHOLOGICAL ASSESSMENT

NAME: Michael Subenko

DATE OF BIRTH: 78-10-2

PARENTS: Alex and Beverly Subenko

ADDRESS: 65 Greentree Lane #32, So. Weymouth, MA 02190    (Tel. 335-0963)

SCHOOL: Weymouth Jr. H. S.    GRADE: 8    REFERRED BY: Team teachers and
                                                        Assistant Principal
                                        CHAIRPERSON: Mrs. Kerrigan

DATE(S) EXAMINED: 93-2-9, 93-2-10    EXAMINER: Dorothy W. Levy

REASON FOR REFERRAL: The SPED-6A, "Special SErvices Request Form" states that
"Mike has shown serious adjustment problems since entering Weymouth
Junior High. Peer relationships are poor as well as class performance.
The team teachers question if he is placed appropriately." This youngster's
marks during the last quarter were F in English, U. S. History, Reading/
Writing, and Physical Education, Incomplete in Science and D in Music.
Teacher's comments indicate lack of effort, unsatisfactory conduct and poor
attendance (Absences for terms 1 & 2 equal 33 days together with 36
tardy days.)

Michael attended the Piagree School for Kindergarten (1983-84). The
next year, he was enrolled in Transitional 1 at the Johnson school and
there apparently made strides in improving reading and math, but still
demonstrated weakness in fine-motor output, listening skills and obeying
rules of the classroom (but not on bus or playground). During the 1985-86
schoolyear, Michael attended the Talbot School and continued there through
Grade 6 with no retentions. A review of his report cards suggests that
Arithmetic has been a relative strength, Reading passing from year to
year but sometimes a struggle, and Language Arts and Handwriting demonstrating
difficulty (but passing). Science and Social Studies were in the D & F
range during Grade 6. Michael attended Silver Lake Regional Jr. H. S.
for Grade 7. The examiner did not find those records in his folder.

This examiner has been asked to assess Michael's current general
cognitive functioning level, learning style, and those emotional concerns which
might be revealed through limited projective testing.

TESTS ADMINISTERED:

WISC-III
Bender-Gestalt
Thematic Apperception Test
Human Figure Drawing
Kinetic Family Drawing
Cole, Deserted Island, Three Wishes

BEHAVIOR OBSERVATION:  Michael displayed a cooperative attitude during our
first session.  His manner was generally serious, but he could respond
to humor.  He demonstrated a strong desire to do well, looking worried
when he'd have to respond  "I don't know", or when sensing that he was
taking a long time to complete a Performance Scale task.  He appeared to
need much reassurance in order to overcome self-doubt and maintain good
effort.  Michael was apt to display a lengthy response time at the
beginning of a subtest (when questions are relatively easy), but speed up
as he became more familiar with the task (but the items were more difficult).
Michael sometimes appeared to have difficulty in comprehending orally
given directions and questions, and needed them repeated or rephrased.

WISC-III testing was completed before Michael's lunch break.  He was
asked to come back immediately after lunch but left the building
instead.  Projective testing was administered the next day, at which
time he displayed the same compliant, cooperative attitude he had the previous
day, but did not leave until our work was completed. He told the examiner
he had left the building the day before at the suggestion of a friend.

## TEST RESULTS

### WISC-III

| Scale | IQ | %ile | 95% Confidence Interval |
|---|---|---|---|
| Verbal | 82 (Low Average) | 12th. | 77 - 89 |
| Performance | 91 (Average) | 27th. | 84 - 100 |
| Full | 85 (Low Average) | 16th. | 80 - 91 |

### Bender-Gestalt:

3 errors.  Above expectation for age.

Organization. poor.

Cognitive Testing, continued next page.

TEST RESULTS: Cognitive functioning, continued.

NOTE:    The following is this examiner's interpretation of Michael's
subtest scatter on the WISC-III.  Other examiner might interpret
these test results differently.


Mid-Average functioning.  Subtest scores with %ile equivalents of 50.

1. Digit Span.    Auditory concentration and immediate recall.  Short-
term memory for non-related numbers, orally presented with no visual
back-up.

2. Block Design. Spatial perception and organization as shown through
integrating part-whole relationships of geometiric designs with
manipulatives, with pictures shown of the final expected configuration.


Weak Average functioning.   Subtest scores with %ile equivalents of 25 & 37.

1. Information.   Recalling and verbally stating specific facts learned
from the general educational/cultural environmenta Long-term memory for
data that is usually verbally presented, not learned through experiences,
nor directly taught.

2. Similarities.  Verbal abstract reasoning as shown through  stating the
the similarity or common elements of pairs of different but related
phenomena.

3. Arithmetic.   Mentally calculating one-step and two-step orally presented
math word problems, with the last six read aloud by the student.

4. Picture Completion.   Visual alertness and visual memory  for details in
often-encountered objects and situations.   Ability to discriminate
essentials from non-essentials in what is seen.

5. Picture Arrangement.  Non-verbal social/commonsense reasoning.  Sequencing,
in cause and effect order, pictures concerning human to human and human
to animal interactions, as well as the natural order of some events.

6. Coding.  Eye-hand speed.   Tracking and transcribing, with paper and
pencil, newly learned number-symbol combinations.  Short-term memory
for visual symbolic material.

7. Object Assembly.  Visual-motor problems solving with manipulatives.
Integrating part-whole relationships of puzzle-like forms, with no
pictures given of expected final configurations.


Borderline functioning.  Subtest scores with %ile equivalents of 2.

1. Vocabulary.  Verbally stating the meaning of words.  Demonstrating an
understanding of langauge.

2. Comprehension.  Verbal social/commonsense reasoning. Verbally, demonstrating
an understanding of cultural behavioral expectations, values, and the
functions of some government instituations.


WEAKNESSES FOR WHICH NO SCORES ARE PROVIDED.
   1. More copying errors on Bender-Gestalt than are expected ag age 14 years
   2. Poor organizational and planning skills as demonstrated by placement
      of designs on Bender-Gestalt.

   3. Need to repeat and re-phrase questions for Michael to try to enhance
      his understanding of what was expectd.

TEST RESULTS: Projectives

Michael's projective themes rather consistently have 'happy endings' no matter what problem situations are stated.  In addition, the people in Michael's stories always have positive interactions  and show caring for each other because this youngster apparently feels that's the way it should be or is expected to be.  For instance, in response to Picture 6B (TAT) he stated that "They love each other, the grandmother and the grandson. (Q) Because they usually do."  To 7 BM, a picture of an older man and a younger man, Michael responded that they are "Having a conversation. ((Q) Son and father. (Q) They are talking to each other. (Q) They get along good."  Only one response (8BM) suggests a sense of separation from other family members (8BM , T.A.T.--" He's not really in the picture" --referring to the boy in the picture.).

The examiner's opinion is that these stereotypical responses were given either because:

(1) Michael is at present out of touch with his own feelings and relies on what he perceives to be cultural expectations to explain his reactions and those of others.

(2) Michael may be a very guarded youngster, masking his own feelings behind  what he may believe to be conforming, acceptable responses in order to hide reactions he fears may be unaccpetable to others

DISCUSSION:  At this administration of the WISC-III, Michael functioned with Average limits on the Performance Scale, and at the Low Average level on the Verbal and Full Scale.  Subtest scatter was not statistically significant, varying from Borderline to Mid-average ranges.  Michael demonstrated relative proficiency in tasks requiring use of short-term auditory concentration where pure repetition was involved but no skills in reasoning or demonstrating an understanding of directions was needed. On the other hand, throughout testing, Michael demonstrated a need at times to have directions repeated or re-phrased to increase his understanding of what was expected of him.

Michael also functioned at a mid-Average level on Block Design, demonstrating age-appropriate skills in dealt with a spatial relationship task  utilizing manipulatives, and where success is determined by combining part-whole relationships of individual geometric designs.  On the other hand, paper-and-pencil copying skills demonstrated more errors than expected at age, slower transcribing ability than for most children in Michael's age range, and poor organizational abilities.

Ability to note and recall general information available in surroundings, both visual and verbal, tested within weak Average limits  as did verbal abstract reasoning, arithmetic reasoning, and non-verbal social/commonsense reasoning . Skills in reasoning and independent learning from his environment then, appear to be at this time within the weak Average range.

This youngster's lowest scores, well below others--at the Borderline level-- were in subtests tapping ability to define words and to state knowledge of cultural behavioral expectations and understanding of societal and government rules and the reasons for them.  This poor functioning may be due in part to Michael's difficulty in understanding what others are saying to him (see paragraph 1, this page) or due to limited exposure to stimulation needed to enhance verbal receptive and expressive abilities.

Projective themes indicate that Michael depends on stereotypical interpretation and responses in order to try to fit in .  He appears either to be out of touch with his  own feelings, or tries to mask them in order to appear conforming (to himself and others).


RECOMMENDATIONS

(1) Michael's instructional level in various          subjects should be determined by the results of the individual achievement test findings determined during this team evaluation.

(2) Further testing to determine whether or not Michael has a langauge disorder  should be considered.

(3) Michael will need extra time to complete paper-and-pencil work and should learn key-boarding as soon as possible.

(4) Michael will require assistance in tasks that call on independent organization and planning skills.

(5) Michael's program should include helping him expand knowledge of the meaning of words and of societal expectations and observations.

(6) Michael should be in a structured environment that clearly defines behavioral expectations with coordinated rewards for achieving goals and loss of privilege when they are not met.

(7) Michael should meet regularly with a counselor, either in a group or individual setting.

Dorothy W. Levy
School Psychologist

# OFFICE OF THE BAR COUNSEL

BOARD OF BAR OVERSEERS OF THE SUPREME JUDICIAL COURT

75 Federal Street
Boston, Massachusetts 02110
(617) 728-8750
Fax: (617) 357-1866
www.mass.gov/obcbbo

DANIEL C. CRANE
BAR COUNSEL

January 7, 2004


LEGAL CORRESPONDENCE

Michael Subenko - W 65867
MCI Norfolk
Box 43
Norfolk, MA  02056

Dear Mr. Subenko:

We are in receipt of your recent correspondence.

The Office of the Bar Counsel investigates complaints of ethical misconduct against attorneys registered to practice in the Commonwealth of Massachusetts. Our jurisdiction is limited to violations of the Massachusetts Rules of Professional Conduct that regulate the practice of law in this state. The office cannot provide legal advice or representation, nor can we assist you with your case. Further, we do not in the first instance have jurisdiction over claims of ineffective assistance of counsel or prosecutorial misconduct; such claims should be addressed in the first instance in an appeal or post-conviction proceeding.

In order to determine whether any post-conviction issues exist in your case, I suggest you consult an attorney. If you cannot afford counsel, you can file a motion with the court for appointment of counsel. You might also consult the Committee for Public Counsel Services, 44 Bromfield Street, Boston, MA  02108, telephone number (617) 482-6212. For referral to private counsel you might contact the Massachusetts Bar Association Lawyer Referral Service, 20 West Street, Boston, MA  02111-1218, telephone number (800) 392-6164. If any post-conviction proceedings you undertake result in a decision by any court suggesting misconduct by an attorney, please bring this matter to our attention again at that time.

I spoke to Mr. Mondano and he advised me that he will be contacting you directly to respond to your request for your file. He further advised me that he did not agree to undertake, nor was he paid to pursue, a motion to revise and revoke or a sentence appeal. Enclosed please find copies of papers he forwarded to me in this regard.

I am returning your correspondence to you for your convenience. A copy will be retained in our records for ninety days.

Sincerely,

Alison Cloutier
Assistant Bar Counsel

Enclosure



*The Commonwealth of Massachusetts*
*Executive Office of Public Safety*
*Department of Correction*
*Bridgewater State Hospital*
*20 Administration Road*
*Bridgewater, Massachusetts 02324*
www.mass.gov/doc



Mitt Romney
*Governor*

Kerry Healey
*Lieutenant Governor*

Edward A. Flynn
*Secretary*

Kathleen M. Dennehy
*Acting Commissioner*

*Deputy Commissioner*

December 16, 2003

Kenneth W. Nelson
*Superintendent*

Mr. Michael Subenko W65867
% MCI Norfolk
PO Box 43
2 Clark Street
Norfolk, MA 02056-0043

RE:    SUBENKO, MICHAEL            SSN #: Unkown        DOB: 10/02/1978

Dear Mr. Subenko:

Pursuant to your request, a thorough check of our records indicates this individual has never been a patient at Bridgewater State Hospital.

Please resubmit the written releases for such records if you have additional information, such as an alias or different spelling of the persons name and I will broaden the search. Please include a date of birth and Social Security number. Please be advised that the procedure for requesting records is as follows: The Department of Correction Policy 103DOC607.05 section 7 (b) indicates that, if the individual is currently incarcerated or hospitalized, the release shall be **witnessed by a medical staff person**. Attached for your convenience are the request forms. When these forms are correctly signed and returned to Bridgewater State Hospital, we will send you the records pertaining to the dates of hospitalization specified.

There may be a twenty-cent charge for each page photostatted and sent to you, should records be located. 103DOC607.05 section (9) further indicates **the Department may impose a charge of 20 cents per page for copying services . . .** Exceptions are further noted: **No charge shall be made for indigent inmates or patients.** 103CMR157.06 defines indigent as: At the time of the request, the inmate or patient has, in all accounts to which he has access, a total amount less than or equal to ten dollars ($10.00) plus the cost of fees sought to be waived; and at no time for the sixty days immediately preceding said request, have the inmates or patients accounts contained more than ten dollars ($10.00) plus the cost or fees sought to be waived.

**(508) 279-4500**

Printed on Recycled Paper

If questions remain, I can be reached at (508) 279- 4570.

Sincerely,

Martin Wood

Martin Wood
Records Manager

cc: file
Legal Department

May 10, 1999

Beverly Ann Subenko
9 Marion Street
PO Box 165
Green Harbor, MA 02041

RE:  Commonwealth v. Michael Subenko

Dear Ms. Subenko:

    Enclosed please find a final and full accounting and bill.
Kindly review same and let me know if you find any errors.

    Give me a call at your convenience.

                                Very truly yours,



                                Frank Mondano

FM/sls
enclosure

January 26, 1999


Beverly Ann Subenko
9 Marion Street
Green Harbor, MA 02041

RE:  Commonwealth v. Michael Subenko

| Date | Description | Hours | Amount | Total |
|------|-------------|-------|--------|-------|
| 3/26/98 | Travel and interview Michael | 3.4 | $250 | $850 |
| 3/30/98 | Meet with Beverly Subenko | 2 | $250 | $500 |
| 3/31/98 | Court Appearance (Brockton) | 1 | $250 | $250 |
| 4/1/98 | Obtain and review case files | 1 | $250 | $250 |
| 4/2/98 | Continued review of case files | 1 | $250 | $250 |
| 4/10/98 | Review Lanc Altman File, | 1 | $250 | $250 |
| 4/13/98 | Review Lane Altman File | 1 | $250 | $250 |
| 5/18/98 | Conversation and Correspondence with reconstructionist | 1 | $250 | $250 |
| 5/19/98 | Brockton Court Appearance | | No Charge | |
| 5/22/98 | Research | 2 | $250 | $500 |
| 6/4/98 | Review reconstructionist letter, draft letter to District Attorney | 2 | $250 | $500 |
| 7/6/98 | Review search warrant material | 1.5 | $250 | $375 |
| 7/7/98 | Travel to court for conference | 5 | $250 | $1250 |
| 7/7/98 | Telephone conference, regarding rediscovery | .25 | $250 | $62.5 |
| 7/8/98 | Draft motion, telephone calls | 1 | $250 | $250 |
| 7/12/98 | Travel Plymouth H of C | | | |
| | FM | 3.5 | $250 | $875 |
| | JR | 3.5 | $125 | $437 |
| 7/16/98 | Travel, clerk's conference, hearing | 4 | $250 | $1000 |
| 7/17/98 | Telephone, correpsondences | 1 | $250 | $250 |
| 9/8/98 | Court Conference | 1 | $250 | $250 |
| 9/29/98 | Court Conference | .5 | $250 | $125 |
| Undated | Review discovery response, Telephone | 2 | $250 | $500 |
| 10/26/98 | Court Conference | 2 | $250 | $500 |
| 11/25/98 | Correspondence, Telephone | 1 | $250 | $250 |
| 11/29/98 | Travel, conference | 3.5 | $250 | $875 |
| 12/3/98 | Travel, court conference | 3 | $250 | $750 |
| 12/28/98 | Trial preparation | 7 | $250 | $1750 |
| 12/29/98 | Trial preparation | 7 | $250 | $1750 |
| 12/30/98 | Trial preparation | 7 | $250 | $1750 |
| 12/31/98 | Trial preparation | 3.5 | $250 | $875 |
| 1/3/98 | Jail visit | 3 | $250 | $750 |
| 1/4/99 | Trial | 10 | $250 | $2500 |

| Date | | | | | |
|---|---|---|---|---|---|
| 1/5/99 | Trial | | 10 | $250 | $2500 |
| 1/6/99 | Trial | | 10 | $250 | $2500 |
| 1/7/99 | Trial | | 10 | $250 | $2500 |
| 1/8/99 | Trial | | 10 | $250 | $2500 |
| 1/11/99 | Trial | | 5 | $250 | $1250 |

**Total**          **$32,224.50**

### Credits

| Description | Amount |
|---|---|
| Retainer | $15,000 |
| Payment | $2,300 |
| Refund/Process | $  316 |
| Refund/Expert | $   405.75 |
| | 18,021.75 |

**Total Credits  $18,021.75**

***Amount Due  14,202.75***

Date                  Description


# of hours@ ?/hr=$


1)      3/26/98 travel to Plymouth 40 min travel to 40 min travel from 2 hours initial interview
Michael Subenko    3.4hours @ 250=**850.00**

2)      3/30/98 meet with Beverly Subenko and Robert Sullivan 2 hours discuss case a enter
agreement 2hours @ 250+**500.00**

3)      3/31/98 appear in Brockton Conf. Barrett Conf .ADA Williams File Appearance ihour
no travel 1 hour @ 250=**250.00**

4)      4/1/98 start file review materials form Michael arrange for file from Lane Altman
1hour@250=**250.00**

5)      4/2/98 finish file review materials form Michael (no file from Lane Altman yet)
1hour@250.00=**250.00**

6)      4/10/98 start review Lane Altmann file ; tel calls to Panacopoulous, Donovan, and
Johnston re reconstruction; 1 hour @ 250.00=**250.00**

7)      4/13/98 review Lane Altman file 1@250=**250.00**

8)      5/18/98 Multiple conversations Johnston; Letter Jonston 1 hour@ 250=**250.00**

9)      5/19/98 Appearance Brockton conf clerk continuance  **no charge**

10)     5/22/98 Research Wolansky etc bad acts secondary **2x250=500.00**

11)     6/4/98 review June 2 letter from Johnston check file draft June 8 letter to DA
        2x250=**500.00**

12)     7/6/98 review Williams ltr of 7/3/98 review search warrant material contained therein
        fax correspondence to Johnston 1.5x250=**375.00**

13)     7/7/98 travel to ct lobby conference Healy con with client conf with DA travel from
        Brokton total time 8 to 1 5x250=**1250.00**

14)     7/7/98 review invoice from Jonston tel call Johnston re discovery issue .25x250=**62.50**

12/30/2003 14:35 FAX 16177378443    BALLIRO & MONDANO    ☒007

15)    7/8/98 draft discovery motion .5 tel call Laurie .25 tel call Michael .25 min **250.00**

16)    7/12/98 to and from Plymouth H of C with JR 1.5 hours there 3.5x250=**875.00fm**
3.5x175=**612.50jr**

17)    7/16/98 To Brockton Conf Clerk, DA, Hearing Healy Mots for discovery 4x250=**1000.00**

18)    7/17/98 Call and ltr Sea Mist Hyannis Re Photos and video tel call Sugarman 1hour
**250.00**

19)    9/8/98 Brockton status not on list conf DA re missing agrees to provide by 9/11/98 1 hour
**250.00**

20)    9/29/98 Brockton Conf -- DA not there conf client .5 hours **125.00**

21)    Review discovery response and diagram-- copy same and sent to Johnston- ltr. Johnston
various conversations-- client ,Gazianno,Rudser--- re counsel for Gazianno 2hours **500.00**

22)    10/26/98 Brockton conf travel plus 1hour total two hours 2x250=**500**

23)    November 25, 1998 plea ltr tel call Laurie research +file work 1 hr=**250**

24)    11/29/98 Travel to Ply H of C conf with client 8 am 11:30am 3.5x250=**875**

25)    11/30/98 Tel call Bev Laurie Foley Clerk research   Comm v Jones 2x250=**500**

26)    December 3, 1998 travel to and from Brockton client conf lobby conference
DeLvechio3x250=**750**

27)    December 28, 1998    All day trial prep 7x250= **1,750.00**

28)    December 29, 1998    All day trial prep 7x250= **1,750.00**

29)    December 30, 1998    All day trial prep 7x250= **1,750.00**

30)    December 31, 1998     Half day 3.5x250= **875.00**

31)    January 3, 1999 to jail 3 hours 3x250=**750**

32)    January 4, 1999 trial all day 10 x 250=**2500**

33)    January 5, 1999 trial all day 10 x 250=**2500**

34)    January 6, 1999 trial all day 10 x 250=**2500**

35)     January 7, 1999 trial all day 10 x 250=**2500**

36)     January 8, 1999 trial all day 10 x 250=**2500**

37)     January 11, 1999 trial halfday 5 x 250=**1250**


Retainer recieved 15000.00
2300.00 recieved during trial
400. 00 recieved during trial for constable- 84.00 used- remainder applied to fee 316.00
405.75 refund fron Johnston
total of all money applied to fees 18021.75

Total; for all services to date 32900.00 minus all fee money 18021.75=14828.75

April 30, 1999

Appellate Division
Superior Court Dept. Of the Trial Court
712 Court House
Pemberton Square
Boston, Ma. 02108

Re: Commonwealth V Subenko Plymouth County # 98760

Dear Sir/Madam;

  I am in receipt of your correspondence of March 22, 1999 in the above referenced matter.
Further I have reviewed  Rule 62 of the Rules of the Superior Court. Unfortunately I have not been able to find a copy of the Guidelines for the Appellate Division and therefore have not been able to review them.

  Notwithstanding the foregoing I write now for the following reasons. First, I have two previously scheduled matters on the 24th of May. Second, as a result of recent communications with Mr. Subenko my position is that I do not represent him.

  Therefore could you kindly consider this my formal request to withdraw from this matter.


        Very truly yours,


        Frank Mondano

FM/sls

Commonwealth of Massachusetts

Suffolk

Appeals Court
No. A.C. 99-P-1404


Commonwealth vs. Michael A. Subenko


Renewed Motion To Withdraw


Now comes undersigned counsel in the above matter and renews his request to withdraw as attorney of record for the above named defendant. As reasons for the foregoing request undersigned counsel states as follows.

1.  The agreement for representation of the defendant did not include the prosecution of any appeal.

2.  The circumstances of the last communication between the defendant and undersigned counsel absolutely precludes undersigned counsel's continued representation of this defendant.

3.  There is currently no communication between the defendant and undersigned counsel and good reason to suspect the none will occur.

4.  The defendant would clearly qualify as indigent.

5.  The defendant would clearly be seeking the appointment of counsel.

For the foregoing reasons undersigned counsel renews his request to withdraw as attorney of record for the above named defendant.

RESPECTFULLY REQUESTED,

Frank Mondano, Esquire
BBO # 351540
BALLIRO & MONDANO
99 Summer Street, Suite 1650
Boston, MA 02110
(617) 737-8442

Date: August 25, 1999

COMMONWEALTH OF MASSACHUSETTS

Suffolk                                    Appeals Court
                                           No. A.C. 99-P-1404


Commonwealth vs. Michael A. Subenko


### Second Renewed Motion To Withdraw


Now comes undersigned counsel in the above matter and renews
his request to withdraw as attorney of record for the above-named
defendant. As reasons for the foregoing request undersigned
counsel states as follows.

1.   The agreement for representation of the defendant did
     not include the prosecution of any appeal.

2.   The circumstances of the last communication between the
     defendant and undersigned counsel absolutely precludes
     undersigned counsel's continued representation of this
     defendant.

3.   There is currently no communication between the
     defendant and undersigned counsel and good reason to
     suspect the none will occur.

4.   The defendant has filed an affidavit of indigency, a
     copy of which is attached hereto.

5.   The defendant has requested the appointment of counsel,
     a copy of which is attached hereto.

For the foregoing reasons, undersigned counsel renews his
request to withdraw as attorney of record for the above-named
defendant.

                              RESPECTFULLY REQUESTED,

                              _____
                              Frank Mondano, Esquire
                              BBO # 351540
                              BALLIRO & MONDANO
                              99 Summer Street, Suite 1650
                              Boston, MA 02110
                              (617) 737-8442

Date: September 23, 1999




SPRINGFIELD DISTRICT

**UNITED STATES**
**POSTAL SERVICE**

FILED
IN CLERKS OFFICE

2004 JAN 30  P 12: 18

U. DISTRICT COURT
DISTRICT OF MASS.

Dear Postal Customer:

The enclosed may have been damaged in handling in the Postal Service. We realize your mail is important to you, and you have every right to expect it to be delivered intact and in good condition. The Postal Service makes every effort to properly handle the mail entrusted to it. However, occasional damage may occur.

Due to the fact that the Postal Service handles in excess of 500 million pieces of mail daily, it is imperative that automated and mechanical methods be used to ensure efficient and prompt delivery of the mails. Damage may occur if mail is insecurely enveloped or bulky contents are enclosed. When this occurs and machinery is jammed, properly prepared mail may also sustain damage.

We are constantly striving to improve our processing methods to ensure that occurrences such as the enclosed are eliminated. We appreciate your concern over the handling of your mail and sincerely regret the inconvenience you have experienced.

Sincerely,

Dennis G. Wnuk
District Manager
Customer Service

Robert M. Koestner
Lead Plant Manager
Processing & Distribution

William J. Boughton
Plant Manager
Bulk Mail Center

Enclosure